Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| ANTONIO J. PERNAS DOMÍNGUEZ<br><br>Parte Recurrente<br><br>v.<br><br>PLANET SOLAR ANTILLAS, LLC<br><br>Parte Recurrida | TA2026RA00197 | *Revisión Administrativa* procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm. SAN-2025-0021741<br><br>Sobre: Ley Núm. 5 de 23 de abril de 1973 (Ley Orgánica de DACo) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera

Rodríguez Flores, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 18 de junio de 2026.

Comparece el señor Antonio J. Pernas Domínguez (señor Pernas Domínguez o recurrente) mediante el recurso de epígrafe y solicita que revoquemos la *Resolución* emitida y notificada el 25 de febrero de 2026, por el Departamento de Asuntos del Consumidor (DACo). Mediante el referido dictamen, el DACo declaró *no ha lugar* a la querella radicada por el señor Pernas Domínguez contra Planet Solar Antillas, LLC (Planet Solar o recurrido), y ordenó su cierre y archivo.

El 29 de mayo de 2026, Planet Solar presentó su *Alegato en Oposición a Recurso de Revisión Judicial.*

Examinados los escritos y los documentos que conforman el apéndice, así como la transcripción de la prueba oral desfilada en la vista administrativa, *confirmamos* el dictamen recurrido.

### I.

El 19 de febrero de 2025, el señor Pernas Domínguez firmó un contrato con Planet Solar para la instalación de un sistema fotovoltaico en su residencia compuesto por diecisiete (17) paneles

solares y el equipo necesario para su funcionamiento con una capacidad aproximada de 7.48 kilovatios (kW).[1] Entre otras cosas, los acuerdos pactados incluían esta cláusula penal:

Política de Cancelación

Al iniciar este encasillado, usted acepta que luego de haber transcurrido diez (10) días a partir de la fecha de la firma del contrato de "Power Purchase Agreement" (PPA o Acuerdo de Compra de Energía Solar) o desde las visitas técnicas, de ingeniería o de instalación, **lo que ocurra primero**, o tres (3) días a partir de la fecha de firma de contrato de compraventa en efectivo (cash) o de compraventa financiada, "PPA", o desde las visitas técnicas, de ingeniería o instalación de sistemas solares, **lo que ocurra primero**, a ser instalados por Planet Solar Antillas, LLC o sus componentes afiliados, los cargos por cancelación serían:

1. **Antes de la visita inicial técnica** – 15% del costo total del sistema solar o el depósito inicial en los casos que aplique, lo que sea mayor.

2. **Durante o luego de la visita inicial técnica** – 30% del costo total del sistema solar o el depósito inicial en los casos que aplique, lo que sea mayor.

3. **Al coordinar la instalación y previo a que est[a] se realice** – 50% del costo total del sistema solar o el depósito inicial en los casos que aplique, lo que sea mayor.[2]

Transcurridas una a dos semanas de la firma del contrato, un ingeniero acudió a la residencia del señor Pernas Domínguez en representación de Planet Solar para preparar un plan de trabajo y un croquis luego de haber tomado las medidas pertinentes.

Empero, el 5 de marzo de 2025, el señor Pernas Domínguez le notificó vía telefónica a Planet Solar que interesaba cancelar el contrato luego de sopesar y contrastar la mensualidad del servicio de electricidad con la del sistema fotovoltaico, debido a que el pago de la última sería sustancialmente mayor; alegó que no fue

---

[1] *Información del Cliente, et al.*, SUMAC-TA, entrada 1, apéndice 7, págs. 27-37.
[2] *Requisitos y Condiciones de Instalación, Íd.*, pág. 31. (Énfasis original). El apéndice del recurso no incluyó el *Power Purchase Agreement* (PPA o Acuerdo de Compra de Energía Solar).

adecuadamente asesorado sobre el impacto económico de la transacción.[3]

En respuesta, el 2 de abril de 2025, Planet Solar le remitió una carta al señor Pernas Domínguez.[4] Mediante esta, le notificó al recurrente que recibió el aviso de cancelación el 14 de marzo de 2025. También le explicó que, para la fecha de cancelación, la empresa ya había incurrido en una serie de gastos y esfuerzos relacionados para la instalación del sistema solar; incluidas la movilización de personal a su residencia, visitas al hogar, diseño de plano y empacado de materiales listos para instalación agendada para el 12 de marzo de 2026. Al haberse coordinado la instalación del proyecto, Planet Solar indicó al señor Pernas Domínguez que, conforme al acuerdo suscrito, debía pagar la penalidad del 50% del costo total del proyecto, equivalente a la suma de $16,121.60, y adjuntó la correspondiente factura.

A raíz de esto, el 10 de abril de 2025, el señor Pernas Domínguez incoó una querella ante el DACo en contra de Planet Solar.[5] Alegó que la cláusula penal era inválida y solicitó que se le eximiera de pagar el cargo por cancelación. Además, arguyó que Planet Solar incurrió en: (1) prácticas engañosas; (2) falta de divulgación adecuada; (3) ambigüedad contractual; (4) desproporción de la penalidad, y (5) violación de los principios de la buena fe contractual. Planet Solar no contestó la querella.

El 23 de febrero de 2026, se celebró la vista administrativa. A esta audiencia compareció el señor Pernas Domínguez, por derecho propio. La vista se celebró en ausencia de la querellada, Planet Solar, quien no compareció ni se excusó.

---

[3] *Mensajes de correos electrónicos* y *Registro de llamadas telefónicas, Íd.,* apéndice 6, págs. 22-26.

[4] *Primera Notificación y Factura, Íd.,* págs. 17-21.

[5] *Querella, Íd.,* apéndice 5, págs. 14-16.

Desfilada la prueba testifical del señor Pernas Domínguez, examinada junto a la prueba del expediente administrativo, el DACo emitió y notificó su *Resolución* el 20 de abril de 2026.[6] En ella, formuló las siguientes determinaciones de hechos:

1. La parte querellante se identifica como Antonio J. Pernas Dominguez, mayor de edad, con dirección postal: Bella Vista Gardens #673 Calle IIA, Bayamón, PR 00957, y correo electrónico: antoniopernas1966@qmail.com.

2. La parte querellada se identifica como Planet Solar Antillas LLC, corporación autorizada [a] hacer negocios en Puerto Rico, con número de registro: 333309. Dirección postal: PMB 513 Box 4956, Caguas, PR, 00725.

3. El 19 de febrero de 2025, el querellante firmó un contrato con la parte querellada, para la instalación de un sistema de placas solares, en su residencia.

4. Luego de haber transcurrido una o dos semanas, acudió a la residencia del querellante un ingeniero, de la parte querellada, para realizar un *croqui* de la residencia, un plan de trabajo según el consumo.

5. El 5 de marzo de 2025, unilateralmente, el querellante mediante llamada telefónica, se comunicó con la parte querellada y con el vendedor, para solicitar la cancelación del contrato, ya que entendió que le instalarían muchas placas solares y pagaría una mayor cantidad en mensualidades, a la que le paga a LUMA.

6. El 2 de abril de 2025, el querellante recibió una notificación de la parte querellada.

   a. En dicha comunicación se le indicó al querellante que, el 14 de marzo de 2025, Planet Solar recibió la notificación de cancelación del consultor del querellante. Desde la firma del contrato [19 de febrero de 2025], Planet Solar, ha incurrido en gastos por movilización de personal a la residencia del cliente, visitas al hogar, diseño de plano y empacado de materiales, esto para la instalación del sistema de placas solares. Por tal razón, hay una penalidad, por un cargo de 50%, que sería por la cantidad de $16,121.60 [*cancel[l]ation fee*]. Dichos cargos están directamente relacionados con trabajos realizados por la compañía para la instalación del sistema solar.

7. Indica el contrato, en lo aquí pertinente, que el período de retractación/derecho de cancelación, es un período de 10 días sin recibir una multa/penalización.

---

[6] *Resolución, Íd.*, apéndice 4.

8. El querellante presentó la querella de epígrafe, solicitando no pagar a la parte querellada, el cargo por cancelación.

9. El querellante firmó el contrato. El querellante no alegó falsificación en su firma.

A la luz de las anteriores determinaciones de hechos, el DACo dispuso que:

De la prueba admitida y el testimonio de la parte querellante, se debe concluir que, entre las partes llegó a perfeccionarse una obligación contractual. Por lo tanto, el contrato firmado el 19 de febrero de 2025, es la ley entre las partes, y obliga a ambas partes a cumplir lo pactado. La parte querellante tenía un término de 10 días, desde la firma del contrato, para cancelar sin penalidad alguna, esto no ocurrió. El querellante presentó su solicitud de cancelación el 5 de marzo de 2025, por lo tanto, le aplica una penalidad, un cargo de 50%, que sería por la cantidad de $16,121.60 [*cancellation fee*], según lo pactado entre las partes. El querellante aceptó que firmó el contrato, y no alegó falsificación en su firma. No surge del testimonio del querellante, que se hayan configurado alguno de los vicios de la voluntad [error, dolo, violencia, intimidación], en la firma del contrato de 19 de febrero de 2025. Por lo tanto, determina este Departamento que, el querellante está obligado, contractualmente, al pago del *cancellation fee*, que le está cobrando la parte querellada.[7]

De tal forma, el DACo declaró *no ha lugar* a la querella y ordenó su cierre y archivo.

En desacuerdo con la determinación agencial, el señor Pernas Domínguez presentó una *Reconsideración* el 10 de marzo de 2026.[8] En dicha solicitud el recurrente alegó que no recibió copia física del contrato, que solo lo recibió por email, y que, como se le perdió su celular, no tuvo acceso al documento. Añadió que no se le informó sobre el *cancellation fee*. Con su solicitud, el señor Pernas Domínguez acompañó una hoja de SUNRUN (quien no es parte en la querella) y cuyo documento tampoco fue parte de la prueba desfilada en la vista administrativa.

---

[7] *Íd.*

[8] *Reconsideración, Íd.,* apéndice 3, págs. 6-7. El contenido de la solicitud de reconsideración surge de la *Resolución en Reconsideración,* infra.

Mediante una *Resolución* pronunciada y notificada el 20 de marzo de 2026, el DACo dispuso que no podía evaluar un contrato incompleto, con una sola hoja, que se alega que se firmó con un tercero. Así pues, denegó la solicitud de reconsideración del señor Pernas Domínguez y ratificó la resolución emitida el 25 de febrero de 2026.[9]

Inconforme con lo resuelto, el 20 de abril de 2026, el señor Pernas Domínguez acudió ante este Tribunal de Apelaciones mediante un *Recurso de Revisión Administrativa* y apuntó la comisión de los siguientes errores:

> Erró el DACo al validar una cláusula penal manifiestamente desproporcionada en un contrato de adhesión, sin examen jurídico estricto de su naturaleza, validez, proporcionalidad y conformidad con el principio de buena fe.
>
> Erró el DACo al omitir adjudicar la alegación de práctica engañosa.
>
> Erró el DACo al no aplicar correctamente las normas sobre cómputo de términos cuando el contrato es ambiguo.
>
> Erró el DACo al ignorar la política pública de protección al consumidor que informa su ley orgánica y su reglamentación.
>
> Erró el DACo al adjudicar a favor de una parte incompareciente sin declarar su rebeldía y sin evidencia sustancial en el expediente.
>
> Erró el DACo al limitar indebidamente el testimonio del apelante-recurrente y, con ello, menoscabar su derecho a presentar evidencia pertinente.[10]

Dado los planteamientos de error concernientes al desfile y apreciación de la prueba vertida por la agencia administrativa, este foro decretó una *Resolución* el 29 de abril de 2026, proveyéndole hasta el 14 de mayo de 2026 al señor Pernas Domínguez para que

---

[9] *Resolución en Reconsideración, Íd.*, apéndice 2, págs. 2-5.
[10] *Recurso de Revisión Administrativa,* SUMAC-TA, entrada 1.

presentara su Transcripción de la Prueba Oral (TPO).[11] Este cumplió con dicho dictamen el 8 de mayo de 2026.[12]

Por su parte, el 15 de mayo de 2026, Planet Solar compareció y solicitó que le otorgáramos un término para presentar su alegato suplementario en relación con la TPO.[13] Consecuentemente, el 18 de mayo de 2026, este foro pronunció otra *Resolución*, ordenándole a Planet Solar a que, en o antes del 29 de mayo de 2026, presentara conjuntamente su alegato suplementario y su oposición al recurso de epígrafe.[14]

En cumplimiento, Planet Solar presentó su *Alegato en Oposición a Recurso de Revisión Judicial*.[15] Arguye que la determinación del DACo encuentra respaldo en la evidencia que obra en el expediente administrativo y que este Tribunal no debe sustituir el criterio especializado de la agencia por una interpretación infundada y acomodaticia.

## II.

## A.

Es norma firmemente establecida que los tribunales apelativos han de conceder gran consideración y deferencia a las decisiones de los organismos administrativos. Ello, dado que las agencias administrativas cuentan con vasta experiencia y conocimiento especializado en cuanto a los asuntos que les han sido encomendados.[16]

Como resultado, la decisión de una agencia administrativa gozará de una presunción de legalidad y corrección que será

---

[11] *Resolución, Íd.*, entrada 2.
[12] *Moción en Cumplimiento de Orden y en Reproducción de la Prueba Oral, Íd.*, entrada 3.
[13] *Moción en Solicitud de Término Adicional para evaluar Transcripción de la Prueba Oral, Íd.*, entrada 4.
[14] *Resolución, Íd.*, entrada 5.
[15] *Alegato en Oposición a Recurso de Revisión Judicial, Íd.*, entrada 6.
[16] *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021), citando a *OCS v. Universal*, 187 DPR 164, 178 (2012); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800 (2012); *Pagán Santiago, et al. v. ASR*, 185 DPR 341, 358 (2012).

respetada, siempre que la parte que la impugna no produzca evidencia suficiente para rebatirla.[17]

En cuanto a las determinaciones de hecho que realiza una agencia, éstas serán sostenidas por el tribunal si se basan en evidencia sustancial que obra en el expediente administrativo.[18] Por evidencia sustancial se entiende "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[19] Por lo tanto, la parte afectada por la decisión administrativa deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial.[20]

Ahora bien, respecto a las conclusiones de derecho de las decisiones de las agencias administrativas, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, señala que estas pueden ser revisadas en todos sus aspectos por el tribunal.[21]

Al respecto, recientemente, en *Vázquez v. Consejo de Titulares*,[22] el Tribunal Supremo hizo eco de la decisión del foro federal en el caso *Loper Bright Enterprises v. Raimondo*,[23] y determinó que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. En *Vázquez*, el Tribunal Supremo enfatizó la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que

---

[17] *Transp. Sonnell, LLC v. Jta. Subastas ACT,* 214 DPR 633, 648 (2024); *Batista, Nobbe v. Jta. Directores,* 185 DPR 206, 215 (2012).
[18] Sec. 4.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9675.
[19] *Rolón Martínez v. Superintendente,* 201 DPR 26, 36 (2018); *González Segarra et al. v. CFSE,* 188 DPR 252, 277 (2013); *Otero v. Toyota,* 163 DPR 716, 728-729 (2005).
[20] *Otero v. Toyota,* supra, pág. 728.
[21] Sec. 4.5 de la LPAU, 3 LPRA sec. 9675.
[22] *Vázquez v. Consejo de Titulares,* 216 DPR ___ (2025), 2025 TSPR 56 (resuelto el 21 de mayo de 2025).
[23] *Loper Bright Enterprises v. Raimondo,* ___ U.S. ___, 144 S. Ct. 2244, 219 L.Ed.2d 832 (2024)

prescribe la LPAU, *supra.* Puntualizó que, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. Con ello, nuestro Tribunal Supremo pautó el fin de la deferencia absoluta a las apreciaciones de derecho arribadas por las agencias administrativas.[24] En conclusión, delimitó que la interpretación de la ley es una tarea que le corresponde a los tribunales y, como corolario, estos foros deben revisar las conclusiones de derecho en todos sus aspectos; ello, como mecanismo interpretativo del poder judicial.[25]

Por consiguiente, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el ente agencial actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional, o (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales.[26]

## B.

El DACo fue creado como una agencia especializada con el propósito primordial de vindicar e implantar los derechos del consumidor y proteger los intereses de los compradores.[27] Este organismo tiene el deber de implementar una estructura de adjudicación administrativa mediante la cual se considerarán las

---

[24] *Vázquez v. Consejo de Titulares*, supra.

[25] *Íd.*

[26] *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021); *Torres Rivera v. Policía de Puerto Rico,* 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

[27] Artículos 2 y 3 de la Ley Núm. 5 del 23 de abril de 1973, según enmendada, conocida como la *Ley Orgánica del Departamento de Asuntos del Consumidor,* 3 LPRA secs. 341 (a)(b).

querellas de los consumidores y se concederán los remedios pertinentes conforme al derecho aplicable.[28]

Tras la radicación de una querella, el DACo puede optar por la celebración de una vista administrativa durante el desarrollo de un proceso de naturaleza adjudicativa. Durante esta audiencia:

> Las partes podrán presentar aquella evidencia documental y testifical incluyendo evidencia de carácter técnico y pericial. El [o]ficial examinador, Juez Administrativo, Secretario o Panel de Jueces podrán tomar conocimiento administrativo, a iniciativa propia o a solicitud de parte, sobre aquellos hechos o circunstancias de interés público que son conocidas por todas las personas bien informadas; o que son susceptibles de determinación inmediata y exacta recurriendo a fuentes cuya exactitud no puede ser razonablemente cuestionada.[29]

Es imperativo puntuar que las ni las Reglas de Procedimiento Civil ni las de Evidencia son de estricta aplicación en las vistas administrativas, al menos que el adjudicador entienda que ello es necesario para concretar los objetivos de la justicia.[30]

Ahora bien, una querella ante el DACo puede presentarse por múltiples razones; por ejemplo, para denunciar las prácticas engañosas de una empresa. Por analogía de la definición de anuncio engañoso, una práctica engañosa se puede entender como aquella "que constituya o tienda a constituir fraude, engaño o comunique o tienda comunicar una idea falsa sobre el bien o servicio [practicado]. También[,] se considera engaños[a] cualquier [práctica] que omita datos relevantes del producto, bien o servicio, limitando o privando al consumidor de tomar decisiones informadas y consientes".[31] La Regla 14 (b) del Reglamento Núm. 9158, *supra,* enumera los supuestos que acapara el término práctica engañosa.[32]

---

[28] *Íd.*, sec. 341e (d).
[29] Regla 20.5 del *Reglamento de Procedimientos Adjudicativos*, Reglamento Núm. 8034 de 14 de junio de 2011 (Reglamento Núm. 8034), pág. 24.
[30] *Íd.*, pág. 27.
[31] Regla 5 (b) del *Reglamento de Prácticas Comerciales*, Reglamento Núm. 9158 de 6 de febrero de 2020 (Reglamento Núm. 9158), pág. 7.
[32] *Íd.*, págs. 16-19.

## C.

En nuestra jurisdicción, la obligación es el vínculo jurídico de carácter patrimonial en virtud de la cual el deudor tiene el deber de ejecutar una prestación que consiste en dar, hacer o no hacer algo en provecho del acreedor, quien, a su vez, tiene un derecho de crédito para exigir el cumplimiento.[33] En cuanto a la obligación de hacer, si la persona obligada a hacer una cosa no la hace o, si al hacerla contraviene el tenor de las obligaciones, la prestación se manda a ejecutar a costa del deudor. El acreedor puede exigir además que se deshaga lo mal hecho.[34]

Por otro lado, el contrato es una de las fuentes de las obligaciones.[35] Este se define como el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones.[36] Una vez perfeccionado un contrato, sus disposiciones tienen fuerza de ley entre las partes, sus sucesores y ante terceros en la forma que dispone la ley.[37]

El Artículo 1248 del Código Civil de 2020 preceptúa que, mediante el contrato de adhesión, "el aceptante se ve precisado a aceptar un contenido predispuesto".[38] Como una sola parte redacta el contrato, este se interpreta en su contra y, a su vez, a favor de quien acepta su contenido.[39] En este tipo de pacto, son anulables las cláusulas abusivas; es decir, las que no se ajusten al marco subsiguiente:

(a) la que no se redacta de manera clara, completa y fácilmente legible, en idioma español o inglés;

(b) la que autoriza a la parte que la redactó a modificar, unilateralmente, los elementos del contrato;

---

[33] Artículo 1060 del Código Civil de Puerto Rico, 31 LPRA sec. 8981.
[34] *Íd.*, sec. 9015.
[35] *Íd.*, sec. 8984.
[36] *Íd.*, sec. 9751.
[37] *Íd.*, sec. 9754.
[38] *Íd.*, sec. 9802.
[39] *Íd.*

(c) la que le prohíbe o limita al adherente la interposición de acciones, y restringe las defensas o los medios de prueba a disposición del adherente, o invierte la carga de la prueba;

(d) la que excluye o limita la responsabilidad de la parte que la redactó;

(e) la que cambia el domicilio contractual del adherente sin que medien razones para ello;

(f) la que, ante el silencio del adherente, prorroga o renueva un contrato de duración determinada; y

(g) la que excluye la jurisdicción de una agencia reglamentadora.[40]

Por otro lado, los vínculos contractuales también pueden contener obligaciones accesorias que conminen el cumplimiento de un pacto principal. Así, una cláusula penal tiene como objetivo "evitar el incumplimiento parcial o el retraso del cumplimiento de la obligación principal. Las cláusulas así convenidas pueden consistir en el pago de una suma cierta, la pérdida del beneficio del plazo o en cualquier otra pena".[41]

El tribunal tiene la facultad para moderar las penas en circunstancias extraordinarias de desproporción económica desorbitada entre la pena y la prestación, pero debe avalar la obligatoriedad de lo pactado.[42] Se ha reconocido que el tribunal puede atemperar la pena si la obligación se ha cumplido parcial o irregularmente,[43] pero esto no es permisible en casos de pena moratoria.[44]

Nuestro Más Alto Foro ha enfatizado que las funciones primordiales de la cláusula penal son: "(1) asegurar el cumplimiento de una obligación, y (2) evaluar por anticipado los perjuicios que habría de ocasionar al acreedor el incumplimiento de la

---

[40] *Íd.*, sec. 9803.
[41] *Íd.*, sec. 9832.
[42] *Íd.*
[43] *Jack's Beach Resort, Inc. v. Compañía de Turismo*, 112 DPR 344, 351-352 (1982).
[44] Véase *R.C. Leasing Corp. v. Williams Int. Ltd.*, 103 DPR 163 (1974).

obligación".[45] Implica, por su naturaleza, un fin punitivo, lo cual viabiliza que "la evaluación de los daños del acreedor sobrepase la medida real del daño, de forma que este exceso tenga el efecto de presionar al deudor a realizar el cumplimiento específico de la obligación para evitar pagar una indemnización mayor a la prestación a la cual se obligó".[46]

El Tribunal Supremo ha interpretado que una cláusula que imponía una penalidad de 33% en honorarios de abogado en caso de incumplimiento contractual no era irrazonable y que fue producto de la autonomía de las voluntades; asimismo, justipreciaron que intervenir con ella constituiría una intromisión indebida que vulneraría el principio de *pacta sunt servanda* al igual que equivaldría tronchar el propósito de la valoración anticipada de daños en estas cláusulas penales.[47]

Ahora bien, nuestro Código Civil de 2020, *supra*, ha impuesto unas reglas de hermenéutica para la interpretación de las cláusulas penales en su Artículo 1257:

> (a) el pago de la pena convenida corresponde exclusivamente al incumplimiento o al retraso;
>
> (b) el acreedor puede optar por exigir el cumplimiento íntegro o por el pago de la pena, y puede acumular ambos remedios en el caso de cumplimiento tardío;
>
> (c) la cláusula penal se interpreta restrictivamente; y
>
> (d) solo puede sustituirse la prestación debida por la convenida en la cláusula penal, si se ha convenido expresamente.[48]

**D.**

Conforme con lo dispuesto en la Regla 45.1 de las de Procedimiento Civil,[49] cuando una parte no contesta la demanda o no se defiende de ninguna otra forma contra las alegaciones y el

---

[45] *Coop. Sabaneña v. Casiano Rivera*, 184 DPR 169, 175 (2011).
[46] *Xerox Corp. v. Gómez Rodríguez y otros*, 201 DPR 945, 960 (2019).
[47] *Coop. Sabaneña v. Casiano Rivera*, supra, págs. 182-183.
[48] 31 LPRA sec. 9832.
[49] Regla 45 de las de Procedimiento Civil, *supra*, R. 45.1.

remedio solicitado, el tribunal o foro adjudicador podrá anotarle la rebeldía por iniciativa propia o a solicitud de parte.[50] Además, la anotación de rebeldía aplica como sanción en aquellas instancias en las que alguna parte en el pleito ha incumplido con alguna orden del foro.[51] El propósito de la anotación de rebeldía es disuadir a aquellos que recurran a la dilación de los procedimientos como una estrategia de litigación.[52]

La Sección 3.10 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, establece que, en el ámbito administrativo:

> Si una parte debidamente citada no comparece a la conferencia con antelación a la vista, o a cualquier otra etapa durante el procedimiento adjudicativo el funcionario que presida la misma **podrá** declararla en rebeldía y continuar el procedimiento sin su participación, pero notificará por escrito a dicha parte su determinación, los fundamentos para la misma y el recurso de revisión disponible.[53]

La consecuencia de una anotación de rebeldía es que se den por admitidas todas las alegaciones sobre hechos correctamente alegados en la demanda o la alegación que se haya formulado en contra del rebelde. Así, la causa de acción podrá continuar dilucidándose sin su participación.[54] No obstante, el tribunal podrá dictar sentencia en rebeldía solo si concluye que procede la concesión del remedio solicitado.[55]

**E.**

En nuestro ordenamiento constitucional, ninguna persona puede ser privada de su propiedad sin el debido proceso de ley.[56]

---

[50] *González Pagán v. SLG Moret-Brunet,* 202 DPR 1062, 1068 (2019); *Banco Popular v. Andino Solís*, 192 DPR 172, 179 (2015).
[51] *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 587 (2011).
[52] *Íd.*
[53] 3 LPRA sec. 9650. (Énfasis suplido).
[54] *Banco Popular v. Andino Solís*, supra, pág. 179; *Rivera Figueroa v. Joe's European Shop*, supra, pág. 590.
[55] *González Pagán v. SLG Moret-Brunet,* supra, pág. 1069; *Banco Popular v. Andino Solis*, supra, pág. 179.
[56] Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1; Emdas. V y XIV, Const EE.UU., LPRA, Tomo 1.

El debido proceso de ley tiene dos vertientes: una sustantiva y una procesal.[57] En la dimensión procesal, el debido proceso de ley exige a los componentes del Estado garantizar que, al interferir con los intereses propietarios de una persona, se cumpla con un procedimiento justo y equitativo.[58]

Así pues, en el contexto de los procedimientos adjudicativos, se deben observar las garantías mínimas siguientes: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar a los testigos y a examinar la evidencia presentada en su contra; (5) asistencia de abogado, y (6) decisión basada en el récord.[59]

Estas garantías están consignadas en la Sección 3.1 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), la cual establece que en todo procedimiento adjudicativo formal ante una agencia se salvaguardarán los siguientes derechos: (a) derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte; (b) derecho a presentar evidencia; (c) derecho a una adjudicación imparcial, y (d) derecho a que la decisión sea basada en el expediente.[60] Cualquier determinación de una agencia que se haga en contravención a estas pautas mínimas no puede prevalecer.[61]

En lo atinente al caso que nos ocupa, la Sección 3.13 de la LPAU, la cual versa sobre el procedimiento durante una vista administrativa, expresa que:

> [...]
>
> (b) El funcionario que presida la vista dentro de un marco de relativa informalidad ofrecerá a todas las partes la extensión necesaria para una divulgación completa de todos los hechos y cuestiones en discusión, la oportunidad de responder, presentar evidencia y

---

[57] *Román Ortiz v. OGPe,* 203 DPR 947, 953 (2020).
[58] *Fuentes Bonilla v. ELA et al.,* 200 DPR 364, 394 (2018).
[59] *Román Ortiz v. OGPe,* supra, pág. 954.
[60] Ley Núm. 38-2017, 3 LPRA sec. 9641.
[61] *San Gerónimo Caribe Project v. A.R.Pe.,* 174 DPR 640, 660 (2008); *Com. de Seguros v. A.E.E.L.A.,* 171 DPR 514, 528 (2007).

argumentar, conducir contrainterrogatorio y someter evidencia en refutación, excepto según haya sido restringida o limitada por las estipulaciones en la conferencia con antelación a la vista.

(c) El funcionario que presida la vista podrá excluir aquella evidencia que sea impertinente, inmaterial, repetitiva o inadmisible por fundamentos constitucionales o legales basados en privilegios evidenciarios reconocidos por los tribunales de Puerto Rico.

[...][62]

## III.

En su recurso, el señor Pernas Domínguez alega que el DACo incidió al validar la cláusula penal incluida en el contrato de adhesión firmado, debido a que esta no es proporcional ni acorde con el principio de la buena fe que debe existir en la contratación. Aduce que la agencia se equivocó al no adjudicar su alegación de práctica engañosa y tampoco aplicar las normas de cómputo sobre términos cuando un contrato es ambiguo, como, según sus dichos, es el suscrito entre las partes. Similarmente, apunta que la agencia ignoró su propia política pública de protección al consumidor. Asimismo, anotó que el foro erró al no decretar la rebeldía de Planet Solar y adjudicar la causa "a su favor" a pesar de que nunca compareció. Por último, señaló que el DACo abusó de su discreción al limitar indebidamente su testimonio durante la vista administrativa, menoscabando su derecho a presentar evidencia pertinente.

Por su parte, Planet Solar aduce que del expediente administrativo surge que el recurrente no presentó evidencia que demostrara haber realizado la cancelación formal dentro del término estipulado en el contrato, razón por la cual arguye que el DACo actuó correctamente al concluir que no existía prueba para derrotar la obligación contractual surgida entre las partes que incluía la

---

[62] 3 LPRA sec. 9653.

penalidad por cancelación. Expuso, además, que la falta de comparecencia de Planet Solar a la vista administrativa no eliminaba automáticamente la validez de las cláusulas contractuales ni desplazaba la obligación del recurrente de presentar prueba suficiente para derrotarlas. *Veamos.*

Discutiremos conjuntamente el primer y cuarto señalamiento de error, que versan sobre la cláusula penal en un contrato de adhesión y los principios protectores al consumidor que el DACo promueve.

Como hemos recalcado anteriormente, las reglas de hermenéutica que rigen los contratos de adhesión son firmes: este tipo de convenio se debe interpretar contra el redactor y a favor del que acepta su contenido. Empero, si el contrato es claro y no contiene una cláusula abusiva según codificada, no hay razón para nuestra intervención o declaración de nulidad contractual.

Una cláusula penal funge como un accesorio contractual que acarrea un objetivo punitivo que conmina el cumplimiento con una obligación principal. Es decir, tiene un efecto de *deterrence* o de evitar el incumplimiento o el rompimiento del pacto primordial entre las partes. Los tribunales tenemos la facultad para atemperar la pena si esta es desmesuradamente desproporcional, pero nuestra autoridad atenuante es limitada, y cede y ha de avalar la voluntad de los contratantes (*pacta sunt servanda*), a pesar de que las cláusulas penales se interpretan restrictivamente. Esto quiere decir que los foros judiciales o administrativos no habremos de intervenir inapropiadamente con lo convenido entre las partes, a pesar de ello ser oneroso, a menos que ello represente un menoscabo sustancial a los principios de la buena fe que sustentan nuestro ordenamiento contractual.

La cláusula penal contenida en el documento intitulado *Requisitos y Condiciones de Instalación*[63] es clara. Indica que el periodo para solicitar la cancelación del contrato sin que se imponga una penalidad es de diez (10) días contados desde la firma del contrato o desde las visitas técnicas, de ingeniería o de instalación, lo que ocurriera primero. En específico, el tercer inciso de la política de cancelación expresa que los cargos por cancelación serían "[a]l coordinar la instalación y previo a que est[a] se realice – 50% del costo total del sistema solar o el depósito inicial en los casos que aplique, lo que sea mayor".[64]

En este caso, aunque el sistema no fue instalado, Planet Solar le reiteró al señor Pernas Domínguez, en su carta del 2 de abril de 2025, que recibió su notificación escrita de cancelación de contrato el 14 de marzo de 2025 y le informó que había incurrido en gastos de movilización de personal a su residencia, diseño de planos y empacado de materiales para la instalación de la estructura, y que este no le notificó sobre su decisión dentro del término provisto para ello de diez (10) días; debido a esto, correspondía el pago de la penalidad de 50% de la totalidad del costo del sistema, lo cual sumaba $16,121.60.[65] Planet Solar hizo hincapié en que la cuantía estaba relacionada con las labores llevadas a cabo para la instalación eventual de las placas en la residencia del señor Pernas Domínguez.[66]

Al evaluar los criterios habidos en la ley para atender las cláusulas penales y los contratos de adhesión con el contexto de autos, colegimos que es sabio no intervenir con la autonomía de las voluntades en este caso.

---

[63] *Requisitos y Condiciones de Instalación*, SUMAC-TA, entrada 1, apéndice 7, pág. 31.
[64] *Íd.*
[65] *Primera Notificación y Factura, Íd.*, apéndice 6, págs. 17-21.
[66] *Íd.*

El señor Pernas Domínguez tuvo ante sí la cláusula penal y firmó el documento en el cual se encontraba; es decir, tuvo la oportunidad de evaluarla y la aceptó como una condición válida y razonable, según estaba escrita, prestando su consentimiento con su firma. Asimismo, estuvo de acuerdo con el precio pactado para la instalación del sistema de placas solares, por lo cual sabía que una penalidad implicaba posiblemente una cuantía como la que Planet Solar le reclamó. Aunque el sistema nunca fue instalado, el recurrido invirtió tiempo, recursos y dinero para instalar las placas solares objeto del convenio, lo que incluyó la visita de un ingeniero a la residencia del señor Pernas Domínguez, que tomó las respectivas medidas y preparó un plano de acuerdo con ellas.

El DACo no erró al interpretar que la cláusula penal era procedente en derecho porque era parte del contrato al cual se obligó. Tampoco contravino su política pública de proteger al consumidor, pues el ente fungió como foro adjudicador *imparcial* que le suplió la debida oportunidad al señor Pernas Domínguez de presentar su querella junto con su evidencia para que esta fuera evaluada y adjudicada según el derecho aplicable.

Resuelta la controversia relativa a la validez y obligatoriedad de la cláusula penal acordada entre las partes, procedemos a atender los cuestionamientos relativos a la presunta falta de adjudicación sobre las alegadas prácticas engañosas y la limitación indebida del testimonio del señor Pernas Domínguez sobre este particular.

Es imperativo acentuar que nuestro sistema de derecho le impone al querellante o demandante el peso de la prueba. Por lo tanto, si se presenta una alegación, el reclamante debe probarla de acuerdo con el estándar de prueba aplicable. En una acción civil, el estándar aplicable es de preponderancia de la evidencia.

En su querella, el recurrente alegó que Planet Solar incurrió en prácticas engañosas, consistentes en no orientarlo correctamente. Al no contar con prueba documental sobre ello, nos remitimos a la TPO:

> Hon. Juez Administrativa: ¿Cuánto término, si alguno, usted tenía para presentar la cancelación sin penalidades?
>
> Sr. Antonio Pernas Domínguez: No recuerdo si eran diez días o eran quince, porque esa es otra; que cuando me orienté aquí la vez anterior, el señor **me explicó que es hasta práctica engañosa en ese sentido, . . .**
>
> Hon. Juez Administrativa: Ajá.
>
> Sr. Antonio Pernas Domínguez: . . .porque el consultor **no le hace énfasis al cliente en ese término.**
> No recuerdo si son diez días o son quince, pero ellos alegan que la cancelación a ellos les llegó el 14 de marzo.[67]

Esta fue la única instancia en la que el señor Pernas Domínguez mencionó las prácticas engañosas durante la audiencia. Alega que la jueza administrativa no le permitió presentar más evidencia testimonial sobre el asunto al no hacerle más preguntas sobre ello. No obstante, las interrogantes de la jueza iban dirigidas a establecer el hecho de si el señor Pernas Domínguez conocía o no el término de la penalidad contenido en la cláusula penal, no sobre la presencia de prácticas engañosas. La jueza le dio la oportunidad al recurrente de añadir algo más a su testimonio y este contestó en la negativa.[68] Era el deber del señor Pernas Domínguez evidenciar su caso y traer la prueba pertinente a las presuntas prácticas engañosas de Planet Solar. Colegimos, pues, que la jueza administrativa no limitó inapropiadamente el testimonio del recurrido y tampoco se equivocó al descartar las alegaciones de prácticas engañosas, puesto que el recurrente no presentó evidencia para que esta pudiera pasar juicio sobre ese asunto.

---

[67] *Transcripción de la Prueba Oral (Vista Administrativa), Íd.*, entrada 3, anejo 1, pág. 6, líneas 16-25; pág. 7, líneas 1-6. (Énfasis suplido).
[68] Véase *Íd.*, pág. 22, líneas 24-25; pág. 23, línea 2.

En tercer lugar, examinaremos el tercer error sobre el término ambiguo en el contrato.

Como es sabido, las ambigüedades en un contrato de adhesión han de interpretarse a favor del firmante.

En el caso de marras, el señor Pernas Domínguez señala que la cláusula penal adolece de ambigüedad en su término porque solo dice "diez (10) días".

Como hemos mencionado, la política de cancelación detallada en el documento titulado *Requisitos y Condiciones de Instalación* indica que el periodo para solicitar la cancelación del contrato sin que se imponga una penalidad es de diez (10) días contados desde la firma del contrato o desde las visitas técnicas, de ingeniería o de instalación, lo que ocurriera primero. También, en la carta fechada 2 de abril de 2025, remitida por Planet Solar al señor Pernas Domínguez, la empresa transcribe parcialmente las cláusulas concernientes del contrato recibido por el señor Pernas Domínguez por correo electrónico que versan sobre el término para solicitar su cancelación:

> Además de todo derecho que usted pueda tener de conformidad con la ley estatal o local, usted [X] TIENE [ ] NO TIENE el derecho a finalizar este PPA sin percibir una multa dentro de 10 [*no less than three*] días *hábiles* de (fecha) mediante notificación al Proveedor *por escrito* a la dirección que figura arriba.
>
> [...]
>
> Usted puede cancelar esta transacción, sin penalización ni obligación, dentro de los diez (10) días *calendario* a partir de la fecha indicada anteriormente [fecha de la firma del contrato].[69]

Una lectura de estas cláusulas demuestra que la política de cancelación no es ambigua en su lenguaje y, por tanto, tampoco está sujeta a interpretación. El contrato se firmó el 19 de febrero de 2025, y concedía un periodo de diez (10) días para cancelar sin

---

[69] *Primera Notificación y Factura*, *Íd.*, entrada 1, apéndice 6, pág. 18.

penalidad.   El recurrente admitió que solicitó la cancelación del servicio el 5 de marzo de 2025.[70]   Siendo así, tal y como resolvió el foro administrativo, el señor Pernas Domínguez canceló el contrato de manera tardía, lo que activaba la exigibilidad de la cláusula penal.

Por último, analizaremos brevemente el quinto error que objeta la actuación del DACo de no anotarle la rebeldía a Planet Solar, a pesar de que nunca compareció, y "favorecer" a dicha parte tras declarar *no ha lugar* a la querella.

Como hemos expuesto en el acápite anterior, una agencia administrativa tiene la potestad para declarar a una parte que no comparece en rebeldía, pero no está obligada a hacerlo. Dicho de otro modo, la declaración de rebeldía de una parte es de naturaleza discrecional para el juzgador de los hechos.

Además, si bien la consecuencia jurídica de anotarle la rebeldía a una parte en el pleito será el entender aceptadas las alegaciones de la demanda o querella, ello no significa que el juzgador de los hechos venga obligado a conceder a la parte querellante todos los remedios solicitados.   El juzgador está compelido a comprobar la veracidad de cualquier alegación que le fuera presentada.   En el presente caso, el señor Pernas Domínguez tenía la obligación de probar su reclamo con evidencia y no lo hizo. No tenía derecho a que se adjudicara la querella a su favor, a base de alegaciones concluyentes y por el simple hecho de que el querellado está en rebeldía.

En su testimonio, el señor Pernas Domínguez admitió que firmó el contrato para la instalación de las placas solares el 19 de febrero de 2025[71]; que no recordaba si tenía diez (10) o quince (15)

---

[70] *Transcripción de la Prueba Oral (Vista Administrativa), Íd.,* entrada 3, anejo 1, pág. 6, líneas 7-10.
[71] *Íd.,* pág. 7, línea 20.

días para cancelar el contrato[72]; que a las dos semanas fue un ingeniero a tomar las medidas del techo, prepararon el paquete del servicio y certificaron que se podía instalar el equipo[73]; y que solicitó su cancelación por vía telefónica el 5 de marzo de 2025[74]. En la vista administrativa quedaron marcados en conjunto la *Primera Notificación y Factura* fechada 2 de abril de 2025, el *invoice register* y los correos electrónicos intercambiados por las partes[75].

A la luz de la prueba desfilada, el DACo determinó que el contrato concedía un término de diez (10) días para cancelar el servicio sin penalidad y que el señor Pernas Domínguez solicitó la cancelación el 5 de marzo de 2025. Es decir, luego de vencido el aludido término, razón por la cual resultaba aplicable la cláusula penal consistente de un cargo por cancelación equivalente al 50% del precio pactado en el contrato.

Los foros judiciales concedemos deferencia a las determinaciones de hecho de las agencias administrativas debido al conocimiento especializado que estas poseen. En el presente caso, las determinaciones de hecho realizadas por el DACo están sustentadas en la prueba sustancial que obra en el expediente administrativo. Le correspondía al señor Pernas Domínguez demostrar que dichas determinaciones no encuentran apoyo en la prueba del expediente administrativo y que las conclusiones de dicha agencia son irrazonables. Sin embargo, el señor Pernas Domínguez no rebatió la presunción de corrección que reviste la decisión del DACo. Por tanto, procede confirmar la resolución recurrida.

---

[72] *Íd.,* pág. 6, líneas 19-20; pág. 7, líneas 4-6.
[73] *Íd.,* pág. 7, líneas 24-25; pág. 8, líneas 4-11; pág. 9, líneas 7-18.
[74] *Íd.,* pág. 6, líneas 7-10; pág. 14, líneas 9-12.
[75] *Íd.,* pág. 16, líneas 8-20.

**IV.**

Por los fundamentos antes esbozados, *confirmamos* la *Resolución* recurrida.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones